IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC HUMBERT | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-0268 |
| TROY LEVI, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                    APRIL  2 , 2015

Presently before the Court is Defendants Troy Levi, David Knox, Darrin Howard, Sheila

Normandeau, David Dempsey, David Cruz, Richard Esbenson, David Filippi, David

Cunningham, Paul DiSalvatore, Michael Bittner and Irvin Smith's Consolidated Motion to

Dismiss, or in the Alternative, for Summary Judgment.  (ECF No. 17.)  For the following

reasons, Defendants' Motion will be granted.

**I.      BACKGROUND**[1]

**A.      The Parties**

At all times relevant to the events giving rise to this lawsuit, Plaintiff was an inmate at the

Federal Detention Center in Philadelphia, Pennsylvania ("FDC").  (Compl. ¶ 3, ECF No. 4.)

Defendants are twelve former or current employees of the United States Bureau of Prisons

("BOP") who performed duties at, or in connection with, the FDC.  Defendants, and their

respective positions, are:  Troy Levi, Warden; David Knox, Captain; Darin Howard, General

Counsel for the FDC; Sheila Normandeau, Library Supervisor; David Dempsey, Special Housing

---

[1] We view the facts, and all reasonable inferences to be drawn therefrom, in the light most favorable to Plaintiff Eric Humbert, the nonmoving party.  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009*); Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Unit ("SHU") Lieutenant; David Cruz, Correctional Officer; Richard Esbenson, Correctional

Officer; David Filippi, Correctional Officer; David Cunningham, Correctional Officer; Paul

DiSalvatore, Correctional Officer; Michael Bittner, Correctional Officer; and Irvin Smith,

Correctional Officer.  (*Id.* at ¶¶ 4-15.)

### B.    Procedural History and Plaintiff's Claims

On December 13, 2006, after a four-day jury trial before Judge Berle M. Schiller in which

Plaintiff proceeded *pro se*, Plaintiff was convicted of conspiracy to commit armed bank robbery,

conspiracy to commit carjacking, carjacking, and two related firearms charges.  *United States v.*

*Humbert*, No. 04-506-1, 2007 WL 2173392, at *1-2 (E.D. Pa. July 27, 2007) ("*Humbert I*").[2]

Plaintiff subsequently filed post-trial motions for a judgment of acquittal and, alternatively, for a

new trial.  *Humbert I*, at *1.  On July 27, 2007, the Court denied the post-trial motions.  *Id.* at *8.

On August 29, 2007, Plaintiff was sentenced to imprisonment for a total term of 835 months.

*United States v. Humbert*, No. 04-506-1, ECF. 237.  Plaintiff appealed.  On July 2, 2009, the

Court of Appeals for the Third Circuit affirmed the judgment of conviction.  *Humbert II*, at 140.

On November 2, 2009, the United States Supreme Court denied Plaintiff's petition for writ of

certiorari.  *Humbert v. United States*, 130 S. Ct. 529 (2009).  On October 22, 2010, pursuant to 28

U.S.C. § 2255, Plaintiff filed a motion to vacate, set aside, or correct his sentence.  *United States*

*v. Humbert*, No. 04-506-1, ECF No. 277.  On July 28, 2011, Magistrate Judge Jacob P. Hart

recommended that Plaintiff's Section 2255 motion be denied.  *Id.* at ECF No. 288.  Judge Schiller

approved and adopted this recommendation.  *Id.* at ECF No. 292.  Plaintiff has appealed that

---

[2] Plaintiff's criminal background is set forth in more detail in the Third Circuit's July 2,
2009 Opinion.  *See United States v. Humbert*, 336 F. App'x 132 (3d Cir. 2009) ("*Humbert II*").

decision.  *Id.* at ECF No. 293.

On January 15, 2008, Plaintiff filed an application to proceed in the instant action *in forma pauperis*.  (ECF No. 1.)  On May 7, 2008, Plaintiff filed a motion requesting appointment of counsel.  (ECF No. 2.)  On October 21, 2010, the Court granted Plaintiff's application to proceed *in forma pauperis* and denied Plaintiff's motion requesting appointment of counsel.  (ECF Nos. 3, 5.)

On October 22, 2010, Plaintiff filed a Complaint, which Plaintiff characterizes as "a Biven's action complaint alleging violations of constitutional rights guaranteed under the First, Fifth, Sixth, Eighth and Forteenth Amendments" and which asserts "unlawful use of restraints, unlawful strip searches, denial of access and meaningful access to the Courts, governmental interference, retalitation, retaliation for a redress of grievances, [and] cruel and unusual punishment . . . ."  (Compl.)[3]  Plaintiff sued Defendants in their respective official and individual capacities.  His claims can be summarized as follows.

    *1.     Access to Courts*

Plaintiff alleges that Defendants Levi, Knox, and Normandeau interfered with his access to courts by:  (1) not permitting him to return to the general population where he would have received greater access to a typewriter; (2) providing him with only one pen at a time to write documents for his criminal trial;[4] (3) restricting his access to the main law library; and (4)

---

[3] Plaintiff's Complaint, and his Response to Defendants' Motion, are not models of clarity.  Nevertheless, since we construe the pleadings of a *pro se* litigant liberally, *see infra*, at Section II, we assume that Plaintiff also alleges violations of the Fourth Amendment as well.  (*See* Defs.' Mem. 4, ECF No. 17 (noting that Plaintiff alleges Fourth Amendment violation).)

[4] On December 20, 2006, Judge Schiller entered an Order, in response to Plaintiff's post-trial motions, directing the Warden at the FDC to provide Plaintiff with two pens and six pencils

requiring restraints during visits from the SHU to the main law library.  (Compl. ¶¶ 26, 27, 35-45.)

### 2. *Strip Searches*

Plaintiff alleges that Defendants Bittner, Dempsey, Cruz, Esbenson, and Filippi performed strip searches of him during transfers between the FDC and the Court, and between the SHU and the main law library.  (*Id.* at ¶¶ 21, 43, 45.)

### 3. *Improper Restraints*

Plaintiff alleges that Defendants Cunningham, Bittner, and Filippi improperly placed him in restraints during transport from his cell to another cell within the SHU and during visits from the SHU to the main law library.  He also alleges that he was improperly placed in restraints while in the main law library.  (*Id.* at ¶¶ 37, 43, 45-46.)

### 4. *Retaliation*

Plaintiff alleges that on May 4, 2007, in retaliation for his multiple requests to be transferred from the SHU to the general inmate population, Defendants Levi, Knox, and Smith transferred Plaintiff to a different cell in the SHU, which had on the door a black security box. (*Id.* at ¶¶ 32-33.)

### 5. *Access to Medical Care*

Plaintiff alleges that he received inadequate medical attention for pain in his wrists and ankles, caused by restraints.  (*Id.* at ¶ 45.)

---

(with erasers) for Defendant's use to write his legal briefs.  (Compl. Ex. E.)  The Order noted that "[t]he provision of these writing implements shall be consistent with the rules, good order, and security of the institution, as determined by the Warden."  (*Id.*)

6.      *Interference with Legal Defense*

Plaintiff alleges that Defendants Dempsey, Cruz, Esbenson, and Filippi interfered with the

defense of his criminal trial by improperly removing legal materials from his prison cell.  Plaintiff

contends that this removal of documents resulted in his inability to question two witnesses fully

during his criminal trial.  (*Id.* at ¶¶ 22-24.)

For Defendants' alleged transgressions, Plaintiff seeks a declaratory judgment, preliminary

and permanent injunction, and monetary, compensatory, and punitive damages.  (Compl.)

Specifically, Plaintiff demands $288 million, or $12 million for each count against each

Defendant, in compensatory and punitive damages, plus costs and attorneys' fees.  (*Id.*)

Furthermore, he requests that the Court discipline all Defendants and, specifically, that

Defendants Cruz and DiSalvatore be terminated from employment.  (*Id.*)

On December 19, 2011, Defendants filed a Consolidated Motion to Dismiss, or in the

Alternative, for Summary Judgment.  (Defs.' Mot., ECF No. 17.)  On March 16, 2012, Plaintiff

filed his Response opposing Defendants' Motion.  (Pl.'s Resp., ECF No. 21.)[5]

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure

to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint

---

[5] On January 17, 2012, Plaintiff filed a motion for an extension of time to respond to
Defendants' Motion.  (ECF Nos. 18, 20.)  On January 18, 2012, Defendants filed a response,
which did not oppose Plaintiff's motion for an extension of time.  (ECF No. 19.)  On March 21,
2012, the Court dismissed the motion as moot.  (ECF No. 22.)

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Third Circuit has stated that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly* . . . continuing with our opinion in *Phillips v. County of Allegheny* . . . and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* . . . pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).  In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  In addition, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged."  *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  As the Supreme Court held in *Twombly*, in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In conducting a review of the adequacy of complaint, district courts must:

> begin by identifying pleadings that because they are no more than conclusions are not

entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.  Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  A complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Fowler*, 578 F.3d at 210-11.

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999).

Defendants framed their Motion as a Motion to Dismiss, or in the alternative, as a Motion for Summary Judgment.  Ordinarily, a court will convert a motion to dismiss into a motion for summary judgment if it considers evidence beyond the complaint.  *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000).  Defendants have submitted a Declaration and exhibits with their Motion in support of their arguments.  Plaintiff has also attached exhibits to his Response. Therefore, we will treat Defendants' Motion as one for summary judgment.  *See Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000) ("Because the district court went beyond [plaintiff's] Complaint (as do we) to consider the evidentiary matters just discussed, any Fed. R. Civ. P.

7

("Rule") 12(b)(6) attack is converted into one under Rule 56."); *Abuhoran v. Morrison*, No. 03-3091, 2005 WL 2140537, at *3 (E.D. Pa. Sept. 1, 2005) (treating portion of defendants' motion to dismiss as summary judgment motion where court considered the parties' affidavits to resolve defendants' exhaustion argument) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003)).

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citations omitted). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

III.    **DISCUSSION**

Defendants assert that most of Plaintiff's claims must be dismissed since he failed to exhaust mandatory administrative remedies before filing this action.  (Defs.' Mem. 1.)  They concede that Plaintiff did administratively exhaust his claim that legal documents were allegedly removed from his prison cell during the course of his criminal trial.  They, nevertheless, argue that Plaintiff is collaterally estopped from re-litigating that claim since the claim was previously adjudicated by Judge Schiller during the criminal trial.  (*Id.*)  Alternatively, Defendants argue that the claim is barred by the *Heck v. Humphrey* doctrine.  (*Id.* at 18.)  In addition, Defendants contend that none of Plaintiff's claims constitute clearly established constitutional violations, which entitles them to qualified immunity.  (*Id.* at 1-2.)

A.    **Except for the Allegation That Legal Documents Were Removed from His Prison Cell During His Criminal Trial, Plaintiff Failed to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court.  Specifically, Section 1997e of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy

or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (internal quotation marks and citations omitted).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Id.* at 71.  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.  This includes administratively appealing an adverse agency decision where applicable. *See Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal without prejudice where the plaintiff filed an administrative grievance but failed to appeal administratively after prison authority denied relief prior to filing complaint in federal court).  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Ngo*, 548 U.S. at 93 (quoting *Nussle*, 534 U.S. at 525).  Failure to comply with the procedural requirements of a prison's grievance system results in a procedural default of the claim. *See Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.").[6]

        In order to determine whether Plaintiff has exhausted the administrative remedies required

---

        [6] Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Rather, failure to exhaust must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).
        In addition, 42 U.S.C. § 1997e(a) is not a jurisdictional requirement.  Thus, failure to exhaust administrative remedies does not deprive the federal court of subject matter jurisdiction. *Nyhuis*, 204 F.3d at 69 n.4.

by the Bureau of Prisons' grievance system, we must understand the administrative process available to federal prisoners. The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10, *et seq.* First, "an inmate shall . . . present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). If the inmate is unable to resolve his complaint informally, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty calendar days from the date on which the Regional Director signed the response. *Id.* The Regional Director has thirty days, and the General Counsel has forty days, to respond. 28 C.F.R. § 542.18.

An inmate may be excepted from filing a Request for Administrative Remedy if he reasonably believes that the issue he seeks to raise is sensitive and that the inmate's safety would be placed in danger if the Request became known to the institution. 28 C.F.R. § 542.14(d). In such a case, the inmate may submit the Request directly to the appropriate Regional Director, clearly mark the Request as "sensitive," and explain in writing the reason for not submitting the Request to the institution. If the Regional Administrative Remedy Coordinator agrees that the

11

Request is sensitive, the Request will be accepted.  Otherwise, the Request will be rejected, and the inmate will be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden will allow a reasonable extension of time for such a resubmission.  If the Regional Director denies an inmate's Regional Administrative Remedy appeal or his "sensitive" request, the inmate may appeal that decision to the Bureau of Prisons' Central Office within thirty calendar days from the date of the Regional Director's response.  28 C.F.R. §§ 542.14, 542.15; (*see also* Howard Decl. ¶¶ 2-4, Def.'s Mem. Ex. A (describing Bureau of Prisons' administrative remedy process for inmates).)

Defendants have demonstrated that Plaintiff has failed to exhaust his administrative remedies with respect to all of his claims, except for the claim related to the alleged removal of documents from his prison cell.[7]  Specifically, the undisputed factual record demonstrates that from August 19, 2004—the date on which Plaintiff entered the FDC—to April 28, 2008—the filing date of the Complaint—Plaintiff filed twenty-two administrative complaints.  (Howard Decl. ¶¶ 5-6, 8 & Ex. A.)  A description of these administrative complaints, grouped by type of claim, follows.

- *Access to Courts*:

  - On August 16, 2006, Plaintiff filed Administrative Remedy Number 423840-F1.  He claimed that he was not receiving legal assistance.  On

---

[7] Defendants offer the Howard Declaration and BOP administrative remedy records to demonstrate that Plaintiff failed to exhaust his administrative remedies.  Plaintiff neither contests the Howard Declaration nor contends that the administrative remedy records from the BOP are inaccurate.  *See Williams vs. U.S. Dep't of Justice*, No. 07-5333, 2008 WL 2485436, at *2 (E.D. Pa. June 19, 2008) (granting summary judgment where plaintiff failed to challenge similar evidence).

August 26, 2006, the Warden denied this claim. (*Id.* at ¶ 16 & Ex. A.)  On September 6, 2006, Plaintiff filed an appeal with regard to this claim (Administrative Remedy Number 423840-R1).  On October 6, 2006, the Regional Director denied his appeal.  There were no further proceedings with respect to this claim.  (*Id.* at ¶ 17 & Ex. A.)

- On December 28, 2006, Plaintiff submitted an Informal Resolution Attempt Form.  (Compl. Ex. H.)  Plaintiff asserted that on December 13, 2006, Defendants had not complied with Judge Schiller's Order that he be provided with two pens to draft his pre-trial motions.  (*Id.*)  On January 9, 2007, the Unit Manager responded that pursuant to Judge Schiller's Order, the provision of a writing instrument to Plaintiff "shall be consistent with the rules, good order and security of the institution as determined by the Warden."  (*Id.*)  The Unit Manager stated that "[i]t has not been determined that [Plaintiff] will not get pens. [Plaintiff's behavior has been violent. And assaultive.  A pen can easily be turned into a weapon that can inflict harm on others."  (*Id.*)  On January 18, 2007, Plaintiff filed Administrative Remedy Number 439597-F1.  (*Id.* at ¶ 21 & Ex. A.)  In this claim, Plaintiff stated that he wanted pens, instead of the pencils he had been provided with, while in the SHU.  (*Id.*)  On February 8, 2007, the Warden indicated that Plaintiff's request had been granted since an investigation revealed that Plaintiff had been provided with a flex pen on January 18, 2007 to prepare his legal work.  (Compl. Ex. H.)[8]  There were no further administrative proceedings with respect to this claim.  (Howard Decl. ¶ 21.)

- On February 12, 2007, Plaintiff filed Administrative Remedy Number 442856-F1.  (Howard Decl. ¶ 22 & Ex. A.)  Plaintiff sought discipline of the mail room staff for opening his legal mail outside of his presence.  On March 5, 2007, the Warden denied the Request, noting that there was no evidence that the staff intentionally disregarded policy or procedure when they opened Plaintiff's legal mail outside of his presence.  There were no further proceedings with respect to this request.  (*Id.*)

_____

[8] On January 31, 2007, Plaintiff served a motion to enlarge time for submission of post-trial briefs.  (Compl. Ex. I.)  In the memorandum in support of this motion, Plaintiff asserted that he did not receive a pen until January 18, 2007.  (Ext'n Mem., *id.* at 2.)

In addition, in January 2007, Plaintiff sent a hand-written letter to Judge Schiller, notifying the Judge that the Court's Order concerning pens was not being followed.  (Compl. Ex. G.)  The letter stated that he was not provided with two pens "because of security purposes" and that he was not being provided with "the legal materials that are necessary to prepar[sic] a brief." In the letter, Plaintiff also requested transfer from the SHU to the regular housing unit, with access to a typewriter and pens to file his brief.  (*Id.*)

- On April 22, 2007, Plaintiff submitted an Inmate Request Form to Defendant Levi, requesting certain books from the main law library. (Compl. Ex. M-1.) Staff Member Howard responded to this Request Form. He stated that Plaintiff failed to show that the current system for prisoners' access to the main library's materials was inadequate. (*Id.*) On April 30, 2007, Plaintiff prepared an Inmate Request Form to Defendant Howard, requesting to be taken to the main law library to use books for his court submission. (*Id.* at Ex. M.) There is no evidence that this Request Form was received by Bureau of Prisons staff. Accordingly, there were no further administrative proceedings with regard to this claim.

- On June 11, 2007, Plaintiff filed an Inmate Request Form to Defendant Levi, contending that he "was not taking[sic] to the main Law Library at all." (Compl. Ex. N-1.) The Warden replied on June 14, 2007 by requesting further explanation. (*Id.*) On June 13, 2007, Plaintiff requested "to go to the general populations[sic] main Law Library." (*Id.* at Ex. N-2.) On June 14, 2007, Levi replied that Howard would discuss the request with Plaintiff. Howard noted that Plaintiff "would be taken to the main law library on Mondays for at least 2 hours to conduct legal research." (*Id.*) On June 21, 2007, Plaintiff filed an Inmate Request Form to Levi. (*Id.* at Ex. N-3.) He claimed that on June 11, 2007 and on June 18, 2007, he was not taken to the main law library at all, which prevented him from conducting any legal research. (*Id.*) This was the extent of administrative exhaustion with respect to this claim. On July 6, 2007, Plaintiff filed a Motion for Temporary Restraining Order seeking relief for this claim. (*Id.* at Ex. O; *Humbert I*, ECF No. 225.) This was denied on July 27, 2007. (Compl. Ex. R-2.)

- On June 7, 2007, Plaintiff prepared an Inmate Request Form to Defendant Levi, complaining that he was "placed inside of the main law library with a belly chain and handcuffs and was told if [he] could not work this way for 2 hours to conduct my legal research [he] would just sit there for that 2 hours." (Compl. Ex. N.) This Request Form does not appear to have been received by Bureau of Prisons staff. (*See id.*) On June 21, 2007, Plaintiff prepared an Inmate Request Form to Levi. (*Id.* at Ex. N-3.) Plaintiff asserted that he was placed in the main law library with handcuffs and a belly chain and claimed that he could not conduct any legal research or writing in restraints. (*Id.*) This Request Form does not appear to have been received by Bureau of Prisons staff. (*See id.*) On June 25, 2007, Plaintiff filed an Informal Resolution Attempt Form concerning these restraints. (*Id.* at Ex. S.) Resolution was not accomplished. Dempsey responded that he assumed that Plaintiff "was placed in restraints for security concerns for the

14

purpose of going to the main law library." (*Id.*)[9] In Plaintiff's July 6, 2007 Motion for Temporary Restraining Order, he sought relief for this claim. (*Id.* at Ex. O; *Humbert I*, ECF No. 225.)[10] On August 1, 2007, Plaintiff filed Administrative Remedy Number 461397-F1. (*Id.* at ¶ 25 & Ex. A; Compl. Ex. S.) He alleged that he could not conduct legal research while in restraints. On August 14, 2007, the Warden denied the claim, noting that Plaintiff was housed in the SHU because of security concerns. The Warden also noted that while Plaintiff was provided access to the main law library in response to a judicial request, he would remain in restraints while in the main law library, in light of security concerns. There were no further administrative proceedings with respect to this request. (*Id.*)

- *Strip Searches*: Plaintiff does not appear to have filed any administrative form, pursuant to the Bureau of Prisons' procedure, with regard to improper strip searches.[11]

- *Improper Restraints*:

---

[9] In addition, Plaintiff has attached as an exhibit to his Complaint an Informal Resolution Attempt Form, dated July 2, 2007, which states that on that date, he "was placed in restraints, handcuffs, bellychain and ankle shackles inside the main law library to conduct legal research" and that he could not research in those restraints. (Compl. Ex. R-1.) On July 31, 2007, Defendant Dempsey responded that informal resolution had not been accomplished "[b]ecause of security concerns, all special housing inmates are placed in restraints." (*Id.*) Plaintiff prepared a Request for Administrative Remedy, dated July 31, 2007, alleging that the response by Dempsey was inadequate. He pointed out that the Informal Resolution Attempt Form was submitted on July 2, 2007, and that he did not receive a response until July 31, 2007. (*Id.*) However, it is unclear when Plaintiff filed this form with Defendants. (*See id.*)

[10] In addition, on June 25, 2007, Plaintiff submitted to Defendant Dempsey an Informal Resolution Attempt Form, in which he claimed he was "[b]eing denied access to the main law library due to brutality and harrassment[sic] by Officer DiSalitore[sic]." (Compl. Ex. P.) On July 17, 2007, Dempsey responded that he was informed that as Plaintiff was being escorted from the SHU to the main law library, he resisted and attempted to walk away from the escorting staff. As a result, he was escorted back to the SHU instead of the main law library. (*Id.*) On July 22, 2007, Plaintiff prepared a request for administrative remedy with respect to this event. (*Id.*) The request form that Plaintiff attached to his Complaint does not appear to have been received by the Bureau of Prisons staff. (*See id.*)

[11] Plaintiff alleged in his July 6, 2007 Motion for Temporary Restraining Order that as he was escorted by Defendant DiSalvitore from one SHU cell to another SHU cell, he was "strip-searched by way of showing his genitals and anal, which were orders by Officer DiSalivitore" and requested injunctive relief against such conduct. (Compl. Ex. O; *Humbert I*, ECF No. 225.)

- On August 1, 2007, Plaintiff filed Administrative Remedy Number 461395-F1.  He complained that he had been mistreated while being escorted to and from the SHU to the main law library.  (Howard Decl. ¶ 24 & Ex. A.)  On August 27, 2007, the Warden denied the request and noted that on June 25, 2007, Plaintiff had attempted to walk away from staff escorting him from the SHU to the main law library and that Plaintiff had been returned to the SHU due to his behavior.  There were no further administrative proceedings related to this request.  (*Id.*)

- *Retaliation*:

  - On May 19, 2007, Plaintiff incorrectly filed an appeal to the Regional Office requesting to be released from the SHU, without submitting an initial administrative remedy request to the Warden, pursuant to the proper procedure (Administrative Remedy Number 453994-R1).  (*Id.* at ¶ 23 & Ex. A.)  The appeal was marked "sensitive."  (Compl. Ex. L.)  On May 25, 2007, the appeal was rejected, stating that the issue raised was not sensitive and that Plaintiff would first have to address the issue to the Warden.  (*Id.* at Ex. L-1.)  There were no further administrative proceedings with respect to this request.  (*Id.*)

  - On August 6, 2007, Plaintiff filed Administrative Remedy Number 461910-F1.  (*Id.* at ¶ 29 & Ex. A.)  He alleged that an FDC Correctional Officer had a relationship with his estranged wife.  On August 27, 2007, the Warden denied the claim, noting that there was no evidence to substantiate this allegation.  There were no further administrative proceedings related to this request.  (*Id.*)

  - On August 26, 2007, Plaintiff filed Administrative Remedy Number 461909-F1.  (*Id.* at ¶ 28 & Ex. A.)  He sought to be released or transferred from the SHU.  On September 10, 2007, the Warden denied the request, noting that Plaintiff was housed in the SHU because of security concerns related to his disciplinary record and involvement in several assaults.  There were no further administrative proceedings with respect to this claim.  (*Id.*)

  - On May 10 or 17, 2007, Plaintiff submitted an Informal Resolution Attempt Form.  (Compl. Ex. S-1.)  He alleged that on May 4, 2007, he was moved from one SHU cell to another, the latter of which had a security box placed on the door.  In the Resolution Attempt Form, Plaintiff requested the reason for placing that box on the cell door.  (*Id.*)  On August 6, 2007, Dempsey responded that Plaintiff was moved to the other cell "for security reasons." (*Id.*)  On August 14, 2007, Plaintiff filed Administrative Remedy Number

16

461115-F1.  (*Id.*; Howard Decl. ¶ 30 & Ex. A.)  He complained about being moved to another cell.  On August 16, 2007, the request was rejected as untimely.  There were no further administrative proceedings regarding this claim.  (*Id.*; Compl. Ex. S-1.)[12]

- *Access to Medical Care*:

    - On June 23, 2005, Plaintiff filed Administrative Remedy Number 380339-F1.  He alleged that he did not receive adequate medical care.  This request was rejected on June 23, 2005, and there were no further administrative proceedings concerning that claim.  (Howard Decl. ¶ 10 & Ex. A.)

    - On August 5, 2007, the Bureau of Prisons received an Informal Resolution Attempt Form filed by Plaintiff.  (Compl. Ex. R.)  Plaintiff requested medical treatment for pain and numbness in his ankles and wrist as a result of conducting research while being in restraints.  (*Id.*)  On August 13, 2007, the Bureau of Prisons responded that Plaintiff would be "evaluated soon." (*Id.*)  On August 27, 2007, Plaintiff filed Administrative Remedy Number 464230-F1.  (*Id.* at ¶ 30 & Ex. A.)  He alleged that he did not receive medical treatment for pain and numbness to his ankles and wrists.  On September 6, 2007, the Warden advised Plaintiff that he was not evaluated by medical personnel on August 14, 2007, as scheduled, because he chose to remain in recreation.  There were no further proceedings with respect to this request.  (*Id.*)

- *Interference with Legal Defense*:

---

[12] On May 13, 2007, Plaintiff sent Judge Schiller a hand-written letter, in which he stated that his "best efforts" to file his briefs "are being blocked and prevented by Troy Levi and Darrin Howard."  (Compl. Ex. K.)  The letter explained:

> When Mr. Levi delegated Mr. Howard to see to it that I get to the Law Library. Yet when I complained that it still hasn't happened, that I'm not being allowed to research, no books, or materials are being given to me, Mr. Levi immediately took offense against me, rather that[sic] to insist with Mr. Howard, and when confronted with the situation on thursday[sic] May 3, 2007.
> I was moved in retaliation on Mary 4, 2007 from cell #824 South and barricaded in cell #830 South, which is a cell for very hostile inmates arbitrarily.
> Further, I talked to several employee's counselor's[sic], Lieutenant's[sic], etc. etc. after this incident, which they has[sic] stated that the move is wrong. and were called to testify they would do so. and this is what I am faced with.

(*Id.*)

- On December 19, 2005, Plaintiff filed Administrative Remedy Number 398342-F1.  He asserted that as a result of a search of his cell, he was missing documents.  The Warden denied this request.  (*Id.* at ¶ 10 & Ex. A.)  On January 30, 2006, Plaintiff appealed this denial (Administrative Remedy Number 398342-R1).  (*Id.* at ¶ 12.)  On March 1, 2006, the Regional Director denied this appeal.  There were no further administrative proceedings with regard to this claim.  (*Id.*)

- On January 9, 2007, Plaintiff filed Administrative Remedy Number 438977-F1.  (*Id.* at ¶ 18 & Ex. A; Compl. Ex. A.)  He alleged that Defendants Cruz, Dempsey, Esbensen, and Filippi improperly confiscated legal material from his SHU cell.  On February 2, 2007, the Warden denied this request, noting that Plaintiff's personal property was impounded in accordance with a disciplinary sanction he had received.  In addition, the Warden noted that SHU staff testified during Plaintiff's criminal trial that his personal legal materials were not impounded or otherwise confiscated.  (Howard Decl. ¶ 18; Compl. Ex. A.)  On February 16, 2007, Plaintiff filed an appeal seeking return of the legal material allegedly confiscated by those Defendants (Administrative Remedy Number 438977-R1).  (Howard Decl. ¶ 19 & Ex. A; Compl. Ex. B.)  On March 16, 2007, the Regional Director denied the appeal, explaining that his personal property had been impounded as a disciplinary sanction.  The Regional Director also noted that Plaintiff had provided no evidence supporting his allegation that those Defendants removed any of his legal materials.  (Howard Decl. ¶ 19; Compl. Ex. B.)  On March 29, 2007, Plaintiff filed an appeal (Administrative Remedy Number 438977-A1) claiming that the Regional Director's response was inadequate.  (Howard Decl. ¶ 20 & Ex. A; Compl. Ex. B.)  On May 17, 2007, the Central Office denied the appeal, explaining that the Warden and Regional Director adequately addressed Plaintiff's issues and that there was no evidence supporting Plaintiff's allegations.  (Howard Decl. ¶ 20 & Ex. A; Compl. Ex. B.)[13]

---

[13] In addition, on December 28, 2005, Plaintiff incorrectly filed three appeals to the Regional Office complaining about staff conduct (Administrative Remedy Numbers 399409-R1, 399411-R1, 399412-R1), without submitting an initial request for remedy, pursuant to the proper procedure.  (*See* Howard Decl. ¶¶ 13-15 & Ex. A.)  These appeals were rejected on December 30, 2005, and there were no further administrative proceedings with respect to these three claims.  (*Id.*)

Furthermore, on August 6, 2007, Plaintiff filed Administrative Remedy Number 461907-F1 seeking to wear tennis shoes and shorts during recreation in the SHU.  (*Id.* at ¶ 26 & Ex. A.)  On August 27, 2007, the Warden denied this request on grounds that shorts are not authorized and that Plaintiff would not be permitted to wear tennis shoes in light of security concerns.  On

Plaintiff asserts that he has exhausted his administrative remedies.  (Compl. ¶ 17;  Pl.'s Resp. 4.)  This is clearly not so.  Of the twenty-two Administrative Remedy claims that Plaintiff filed, only one was appealed to the General Counsel, pursuant to proper procedure.  This claim, Administrative Remedy Number 438977, concerned the allegation that legal materials were removed from Plaintiff's cell during his criminal trial.  (Howard Decl. ¶ 8; *see also* Compl. Ex. A (FDC Informal Resolution Attempt and Response, and Appeal and Response, concerning search of Plaintiff's cell and resulting taking of two legal binders)).  Plaintiff has failed to exhaust all but one of his claims, and the unexhausted claims must be dismissed.  *White v. Bledsloe*, 368 F. App'x 273, 274 (3d Cir. 2010) (affirming grant of summary judgment where claims had not been administratively appealed); *Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (affirming grant of motion to dismiss where inmate failed to exhaust majority of his claims); *Rodriguez Ramos v. Smith*, No. 04-0249, 2005 WL 3054291, at *7 (E.D. Pa. Nov. 14, 2005) (granting motion to dismiss based in failure to exhaust administrative remedies); *Abuhoran*, 2005 WL 2140537, at *5 (dismissing claims for failure to exhaust).

Plaintiff argues that we must construe his Complaint and Response liberally and that he has exhausted administrative remedies since Defendants ignored his administrative remedy requests with respect to his claims concerning restraints, strip searches, and meaningful access to

---

that same day, Plaintiff filed Administrative Remedy Number 461908-F1, alleging that he should be given additional time in recreation.  (*Id.* at ¶ 27 & Ex. A.)  On August 27, 2007, the Warden denied the claim, explaining that Plaintiff received the appropriate amount of recreation according to policy.  (*Id.*)  There were no further administrative proceedings with respect to these requests, and these requests do not appear to be a subject of the Complaint.  (*Id.* at ¶¶ 26-27.)

courts. (Pl.'s Resp. 8-10, 16-18, 23-24, 30-31.)[14]  In support of this argument, Plaintiff has

attached to his Complaint several Inmate Request Forms, and Requests for Administrative

Remedies that he appears to have prepared.  However, there is no evidence that any Defendant

ignored these forms.  For those forms to which there appears to have been no response, there is no

evidence that Defendants even received them.  To the contrary, Defendants have submitted a

computerized index showing the twenty-two Administrative Remedy submissions that Plaintiff

filed and that Defendants did receive.  Of these twenty-two submissions, Plaintiff only exhausted

the grievance procedure for one claim.  Plaintiff does not contest the Howard Declaration or

contend that the administrative remedy records from the Bureau of Prisons are inaccurate.  *See*

*Williams*, 2008 WL 2485436, at *2 .  There is no evidence of any interception by Defendants, or

any other attempt to block his exhaustion of administrative remedies.[15]  *See Richardson*, 2012 WL

928706, at *5 (finding that plaintiff failed to present any evidence that he was prevented from

exhausting his administrative remedies where plaintiff failed to provide evidence that the warden

actually received the request form or that defendants attempted to hinder his exhaustion of

---

[14] In his Response, Plaintiff claims that his Inmate Request to Staff Forms "***went on deaf
ears***" (Pl.'s Resp. 30 (original emphasis)), and on one occasion, Defendant Esbenson "***crumbled
up*** plaintiff's request in his face and condescendingly stated 'now file that to the courts about
your rights.'" (*Id.* (original emphasis).)

[15] In his Response, Plaintiff asserts that Esbenson crumbled up an Inmate Request.  (Pl.'s
Resp. 30.)  However, this assertion is neither sworn to nor verified.  In any event, even if
Esbenson did crumble up the Inmate Request, Plaintiff was required to continue with the
grievance procedure by filing "a formal written Administrative Remedy Request, on the
appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the
Request occurred."  28 C.F.R. § 542.14(a).  He did not do so.  Plaintiff cannot claim ignorance of
this next step, as he has filed several of these formal requests with respect to other claims.  *See
Richardson v. United States*, No. 10-1009, 2012 WL 928706, at *5 (M.D. Pa. Mar. 19, 2012)
(noting that plaintiff demonstrated awareness of procedural grievance requirement when he had
previously complied with it).

administration remedies).  Nor has Plaintiff submitted any documentation of reasonable efforts to

exhaust.[16]  In addition, Plaintiff's filing of the Motion for Temporary Restraining Order with

respect to these claims, or hand-written letters to the Court, fails to satisfy exhaustion of the

Bureau of Prisons' grievance procedures.  *See Standifer v. Davis*, No. 04-1193, 2005 WL

2335111, at *3 (M.D. Pa. Sept. 23, 2005) (rejecting plaintiff's assertion that a mandamus action

previously filed in federal court satisfies the exhaustion requirement).

Plaintiff asserts that by writing to the Regional Director, based upon the directives of

several prison officials and his belief that his request was of a "sensitive nature," he exhausted the

administrative remedies.  (Pl.'s Resp. 14-15.)  Plaintiff explains that he had directly identified

Levi, "who acted in concert with others in retaliation to place [Plaintiff] in a more barricaded cell

under disciplinary custody to impede on the access to the legal materials needed to prepare his

post-trial appeal."  (*Id.* at 15.)  To the extent that Plaintiff disagrees with the Regional Director's

determination that his request was not of a "sensitive nature," this does not excuse him from

complying with the non-sensitive grievance procedures.  *See Pena-Ruiz v. Solorzano*, 281 F.

App'x 110, 113 (3d Cir. 2008) (noting that the Third Circuit "has not recognized 'sensitive'

subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust"); *see

also Boyd v. United States*, No. 06-1359, 2009 WL 4544693, at *5 (M.D. Pa. Nov. 30, 2009)

---

[16] To the extent that Plaintiff argues that exhaustion under these circumstances would
have been futile, such argument must fail.  "Congress' intent in passing the PRLA was to wrest
control of prisons from lawyers and inmates and return it to prison administrators."  *Croak*, 312
F.3d at 112 (citing *Kertes*, 285 F.3d at 294).  "The exhaustion provision of the PRLA is a
bright-line rule."  *Id.* (citing *Nyhuis*, 204 F.3d at 75).  There is no futility exception to the PRLA.
*Nyhuis*, 204 F.3d at 71.  In *Nyhuis*, the Third Circuit reasoned that a futility exception would
frustrate Congress' purpose of stemming prisoner lawsuits and preventing strategic
circumvention of PRLA's exhaustion requirement.  *Id.* at 74.  Plaintiff has not set forth a
compelling reason to excuse compliance with the exhaustion requirement.

(finding that the rejection of plaintiff's sensitive grievance did not exempt plaintiff from complying with the exhaustion requirement).  While Plaintiff alleges in his Response that the Warden acted in concert with others in retaliation against Plaintiff, there is absolutely no evidence in the record to support this allegation, and there are no facts asserted in the Complaint from which such conclusion can reasonably be drawn.  *See Boyd*, 2009 WL 4544693, at *5 (finding that plaintiff's claim that seeking review would subject him to additional retaliation was "wholly speculative").[17]

Accordingly, Plaintiff's claims, except his claim that legal documents were removed from his prison cell during his criminal trial, are dismissed with prejudice.[18]

### B. While Plaintiff Administratively Exhausted His Claim That Legal Documents Were Removed From His Prison Cell Over the Course of His Criminal Trial, These Claims Are Barred by the *Heck v. Humphrey* Doctrine

Plaintiff alleges that Defendants Dempsey, Cruz, Esbenson and Filippi's confiscation or destruction of the legal documents that Plaintiff intended to use for his criminal trial "deprived [P]laintiff of that property with[out] the due process of law" and "denied him constitutionally meaningful access to the courts."  (Pl.'s Resp. 7, 20; Compl. ¶¶ 22-24.)  The parties agree that

---

[17] With respect to his claim that Defendants wrongfully opened his legal mail outside of his presence, Plaintiff contends that Levi had the mail room supervisor write Plaintiff an apology letter, and because Defendants knew that Plaintiff planned to use the apology letter in his complaint in this action, they confiscated this letter.  (Pl.'s Resp. 25-26.)  Plaintiff claims that he exhausted his administrative remedy because "he had received a favorable result."  (*Id.* at 26.)  To the extent that Plaintiff claims that he exhausted administrative remedies because the issue is now moot, in light of the fact that the mail room supervisor was instructed to draft an apology letter, this does not excuse Plaintiff from failing to comply with the exhaustion requirement.

[18] We dismiss the Complaint with prejudice because Plaintiff's failure to exhaust cannot, at this stage, be cured.  The administrative remedies are no longer available.  *See Rodriguez Ramos*, 2005 WL 3054291, at *7 n.3 (citing *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004)); *Abuhoran*, 2005 WL 2140537, at *5 (citing 28 C.F.R. § 542.14(a)).

Plaintiff has administratively exhausted his claim that legal documents were removed as a result of a search of his cell.  (*See* Compl. ¶ 16 & Ex. A; Defs.' Mem. 1; Pl.'s Resp. 18.)

Nevertheless, Defendants argue that:  (1) Plaintiff's claim must be dismissed to the extent that he seeks to collaterally attack his conviction on grounds that he allegedly did not receive a fair trial, in light of the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) (Defs.' Mem. 18); and (2) this claim is barred by collateral estoppel since it was fully adjudicated by Judge Schiller during Plaintiff's criminal trial (Defs.' Mem. 16).  Plaintiff responds that his challenge has no bearing on his conviction, or the duration of his sentence, and therefore, Plaintiff should not have to satisfy the "favorable termination requirement of *Heck*."  (Pl.'s Resp. 20.)

       1.    *Heck v. Humphrey Doctrine*

It is well established that a prisoner's civil rights suit for damages that would implicitly question the validity of his conviction or duration of his sentence is barred unless he can demonstrate that his conviction or sentence has been invalidated.  *Heck*, 512 U.S. at 486-87.  This "favorable termination" rule applies "no matter the target of the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).[19]

Plaintiff alleges that Defendants Dempsey, Cruz, Esbenson, and Filippi's confiscation or destruction of the legal documents that Plaintiff intended to use for his criminal trial "denied him

---

[19] In *Heck*, the Supreme Court held that a litigant could not proceed with his Section 1983 damages action when the constitutional questions in that suit, if resolved favorably for the claimant, would necessarily undermine the validity of his prior conviction.  Although *Heck* involved a state prisoner seeking damages under Section 1983 for allegedly unconstitutional conduct, the principle also applies to *Bivens* claims against federal officials.  *Holmes v. Dreyer*, 431 F. App'x 69, 70-71 & n.2 (3d Cir. 2011); *Lora-Pena v. F.B.I.*, 529 F.3d 503, 505 n.2 (3d Cir. 2008).

constitutionally meaningful access to the courts" and deprived Plaintiff of that property without the due process of law.  (Pl.'s Resp. 7, 20; Compl. ¶¶ 22-24.)  For these alleged transgressions, Plaintiff seeks a declaratory judgment, preliminary and permanent injunction, and monetary, compensatory and punitive damages—specifically, $12 million for this Count against each Defendant, in compensatory and punitive damages, plus costs and attorneys' fees, and injunctive relief in the form of disciplining all Defendants and termination from employment of Defendants Cruz and DiSalvatore.  (Compl.)

　　　　Plaintiff's argument that the destruction of legal documents denied him meaningful access to courts is a collateral attack on the validity of his conviction and sentence.  Indeed, Plaintiff made this precise argument to Judge Schiller during his criminal trial.  During that trial, Plaintiff stated that the exhibits and documents that he needed in order to cross-examine DeGregorio and Roselli, two government witnesses, had been removed from his cell, and that he needed those documents to conduct his defense.  (Dec. 13, 2006 Trial Tr. 3.2, Pl.'s Resp. Ex. D; Dec. 14, 2006 Trial Tr. 4.35, Pl.'s Resp. Ex. E.)  Judge Schiller brought in witnesses, including Defendant Cruz, Defendant Dempsey, Senior Officer Specialist Richard Spencen, Jr., and Reginald Gene Barnett, and David Green, two inmates who were housed next to Plaintiff at the time.  Judge Schiller questioned these witnesses about the incident.[20]  He concluded that "whether or not the papers were or weren't taken, I will not reach an ultimate conclusion on that, but I will say that as far as Mr. Humbert being prejudiced and being unable to conduct his defense, I deny that allegation -- I

_____

[20] Judge Schiller stated that he wanted the record to reflect that the Court "conducted a hearing which had as its witnesses, three prison guards, one of whom was the supervisor lieutenant and two inmates, who are housed right next to Mr. Humbert's cell."  (Dec. 14, 2006 Trial Tr. 4.37.)

deny -- I overrule Mr. Humbert's objection and, therefore, we're going to proceed." (Dec. 14 Trial Tr. 4.38.) We are compelled to conclude that in claiming that the destruction of legal documents denied him meaningful access to courts, Plaintiff seeks to undermine the still-valid conviction and sentence that he was given. *See Allen v. Gibbons*, 176 F. App'x 671, 673 (7th Cir. 2006) (finding complaint barred under *Heck* where the court could not imagine how the plaintiff's allegations could not undermine the validity of his sentences and where the plaintiff made the very argument he makes now in the unsuccessful appeal of his judgment); *Murphy v. Bloom*, No. 10-1757, 2011 WL 2115826, at *4 (M.D. Pa. May 27, 2011) (dismissing claim that defendants altered trial transcripts and placed a false declaration in the sentencing memorandum because success on those claim would necessarily imply that his conviction and sentence are invalid); *Dukes v. Pappas*, No. 09-3869, 2010 WL 2891508, at *6 (E.D. Pa. July 20, 2010) (finding that since plaintiff had not demonstrated that his conviction or sentence had been reversed or called into question as required by the *Heck* doctrine, plaintiff could not obtain monetary relief for damages claim arising out of defendants' alleged withholding of *Brady* material); *Harrison v. Grand Jurors*, No. 05-348, 2006 WL 354218, at *2-4 (N.D. Fla. Feb. 13, 2006) (finding claim that defendants unlawfully conspired to indict and convict him of crimes he did not commit was barred by *Heck* doctrine where a determination that the indictment in plaintiff's criminal case was defective would call into question the validity of plaintiff's conviction). For the same reasons, the *Heck* doctrine bars Plaintiff's due process claim as well. *See Allen*, 176 F. App'x at 673 (denying claim of denial of due process based on *Heck*). Accordingly, Plaintiff's claims of denial of meaningful access to courts and of deprivation of property without due process must be dismissed.

25

**C.      Other Defenses Raised by Defendants**

While Defendants in their Motion raise other defenses, such as sovereign and qualified immunity and failure to state a claim, the Court need not address these issues.  Plaintiff's failure to exhaust administrative remedies and the *Heck* doctrine bar the claims in this action.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**

26